First matter is Duran Pichardov versus Attorney General. Good morning, Your Honor. Good morning. May it please the Court, my name is Jeremy Glenn, and I represent the petitioner here, Mr. Hector Duran Pichardov. I'd like to reserve two minutes' time for rebuttal. Okay. So that I'm clear, the remedy you're asking for is what? I assume it's not an order which we couldn't give you conferring citizenship. Yes, Your Honor. The remedy we are seeking is for this Court to vacate Mr. Duran's removal and to order the USCIS to schedule him for an oath ceremony as the INS was required to do in 1998. Okay. And your best authority, I know it's all shaky ice out there for you, but what's the strongest little bit of ice you can find to stand on to make that argument? Your Honor, I would say there are a variety of pieces that all fit together in this puzzle. And the first is one that will take the weight of the argument. There might be a lot of pieces, but if you could just give me one piece that would be strong enough to hold your argument, that's all I really need. Your Honor, the piece that's strong enough to hold this argument is the principle that was announced yet again by the Supreme Court just last month in the Udalong case. And there it noted that a deportation proceeding cannot depend entirely on the fortuity of an individual official's actions. There it reaffirmed a longstanding position that an individual's right to remain in this country cannot be dependent on circumstances so fortuitous and capricious. Here... You can grab it in the hat, the right to remain in the country. What right, what's the source of the right that he had to remain in the country? What conditions are on that right, and why didn't you waive the entire argument by not proceeding under 1447B to ask the district court after the 120 days lapse, ask the district court to give you a remedy? Yes, Your Honor. As an initial matter, it's not at all clear here that 1447B relief was even available. In fact, as the second certicate noted in 2009, 1447B relief is only available when the INS has failed to make a determination on an application, not as here when the INS made a determination but has simply failed in its ministerial duty to schedule Mr. Durand for an oath ceremony. But the notice to him specifically said we're going to make a determination and let you know at some future date. So why doesn't that make the statute available to him? Your Honor, it's undisputed here that at the time of his interview, the INS officer did actually make a determination. He determined that he met the five statutory criteria to be scheduled for an oath ceremony. At that point, the INS officer had no discretion left. In other words, there was no other determination yet to be made. Well, isn't there a – I mean, you'd concede, wouldn't you, that until every step is done, it's not done, right? Yes, Your Honor. Apparently he has not sworn. So since everything isn't done and the assertion is, hey, they should have done something, how can 1447B not apply? Isn't that, in fact, the very thing Congress set up to make sure that people in your client's position would have someplace to go to say they haven't done what they're supposed to do and make them do it? That's the vehicle Congress established, isn't it? It was the vehicle that Congress established for situations where the INS did not make a determination. In this case, however, Mr. Duran was in administrative limbo because the ball was in the government's court. They had made a determination. Well, it's in the government's court if they have made a determination or haven't. I guess, you know, there's – you've got a sort of an unusual position in saying that they have made a determination and, therefore, there was nothing to do but the oath and distinguishing 1447B on that ground when 1447B speaks broadly to the statute itself to a right to go to the district court after 120 days if you haven't got the relief, right? Your Honor, as the Second Circuit noted in that case where the facts were almost indistinguishable, 1447B specifically says that relief is available when the INS has failed to make a determination. It doesn't say that relief is available when all that is left to do is send out an oath. There were no determinations left. Determination under 1446. Under 1446, Your Honor. Let me try this on you, then, because when he was before the immigration officer, Officer Perry, I believe his name was, he received a slip, and that slip said, unless I'm misquoting, the INS will notify you later of the final decision on your application. Doesn't that mean that a determination was not made? Your Honor, as the USCIS even described it in the 2009 adjudication that they did on this case, they're splitting hairs as to whether a determination has been made and whether a final adjudication has been made. And an adjudication, they said, only comes when we send out the paperwork. But the point is that he did not get a final decision on the application. Your Honor, we would contend that he did get a final decision on the application. What decision did he get? He got the decision that he had passed all of the five steps, and under the regulation, once those five steps are met, Your Honor. An oral representation, right? It was an oral. That's your position. There was an oral representation, so the government wasn't in a position to say at any point later than that, we have a final thing that we need to, a final thing we need to do before you take the oath. Your Honor, because it is undisputed by all the parties that Mr. Duran had checked the five necessary statutory boxes, which had already included all of the discretion that the officer had, he was obliged to send out the oath ceremony. There wasn't another determination left to be made, and this is precisely the kind of language in this regulation that the Supreme Court has noted gives rise to a liberty interest, which is precisely what Mr. Duran had here, a statutory liberty interest in being scheduled for an oath. The regulation is explicit. It says once an applicant complies with all of the statutory requirements, which Mr. Duran has, the officer shall grant the application, he shall grant it within 120 days, and he shall notify the applicant of the procedures to follow. All that was left here was a clerical duty, and when a clerical error by an agency leads to a gross deprivation of rights, as was the case here. You keep that rabbit, you keep stuffing it into that hat, a gross deprivation of rights. The gross deprivation of rights here was that he didn't have an oath scheduled. Correct, Your Honor. And then when the oath was finally taken away from him. It's a procedural error. Is that a gross deprivation of rights when he himself could have done something to cause the oath to be administered, to schedule it? Your Honors, even if this Court were to find the 1447B relief was available, it shouldn't be held against Mr. Duran here because he was induced by the government's own assertions to not seek out another remedy. So you really are asking for a stop. I mean, in your reply brief you seem to indicate that you're not asking for a stop. But isn't that an estoppel argument? Your Honor, we believe that it's not an estoppel argument per se. Instead, it goes in favor of an equitable remedy in this case. What's the name of that equitable remedy in this case? The equitable remedy here is a nunk-pro-tunk adjudication. Sounds like estoppel to me. It's been a while since I've been clapped in like estoppel. Don't let them say, yeah, don't let them rely on what they said and did. Are you saying that he relied on, well, you're not arguing there's any kind of reliance here on his status as a, I don't know, a virtual citizen of some kind? No, Your Honor. Mr. Duran had every reason to believe he had passed the exam because, in fact, he had met all of the requirements. The INS officer told him as much and told him that the only reason he couldn't schedule him for an oath that very minute is because he didn't have the paperwork. Should we hold him to some responsibility for checking the information that he was given at his last interview so that, and if he had, he would have determined, hey, they've got the wrong number here. It's not my initial A number. Something is wrong. Maybe I should pursue it. And, Your Honor, he did pursue it. He went back to the INS repeatedly and was told repeatedly again that he had passed. Well, he pursued it in the sense that he was asking that I get my date for the oath ceremony, but he didn't pursue it in the sense of saying, wait a minute, this is the wrong number. I won't get the right notice. Your Honor, and I'm sure that Mr. Duran at this point regrets that decision on his part. However, it should not weigh against him in this proceeding because this proceeding is a because of the consequences that the Supreme Court highlighted. How do we do it? How do we have the BIA rule that doesn't have any jurisdiction because the application was still pending? And I can't imagine a situation where we could write something that maybe can help me with this that would analytically stand up to allow us to do what you're asking us to do, given the law that's out there. You can't equitably confer citizenship. You've made it clear you're not asking for us to confer citizenship, but you're asking us basically to put the paste back in the tube. But I don't know where we get the authority to do that, other than some kind of equitable remedy that you're saying is not estoppel, but as my colleague just said, sure, it's quacking like an estoppel. Sure, it looks like an estoppel to me. And you're not arguing reliance. No, Your Honor, we aren't arguing estoppel because we think the violation here rises above the level of a mere estoppel claim. This was a due process violation, and that's because he had this statutory liberty interest because the statute was so explicit. And once he had that interest ñ How do you meet Murdoch? I mean, we said specifically in Mudrick, I guess is how you say that, quote, given the discretionary nature of immigration benefits, Mudrick's INS delay as due process violation claim must fail at the threshold. Yes, Your Honor. It's a pretty blunt statement, right? Your Honor, in that case, the court specifically noted there was no hard and fast deadline for discretionary relief in the asylum context. This is a completely different factual scenario. There is a hard and fast deadline, and in Mudrick there was no statutory liberty interest at stake and therefore no due process violation. Here there was a statutory liberty interest because the statute provided that the officer shall do something. That is the touchstone of when a statutory liberty interest can arise. For example, in the Greenholts case, one of the seminal statutory due process cases there, the statute read that the parole board shall order a release unless it is of the opinion it should not. And then it had 14 non-exclusive discretionary factors. This statute has no post-discretionary factors. If we were to say that you do have a due process right and we were to say or conclude that 1447B actually applies in this case and was available, does that pretty much dispose of your case? Your Honor, it does not. It does not because non-proton relief, as this court noted just in September, is appropriate when justice requires, especially in an immigration context where there has been an error in the immigration proceedings. Let me ask that again. If we say that 1447B, which means, of course, that he had a right to go to the district court to make an application to inquire about the delay in his case, if that applies and he should have availed himself of that statute, doesn't that dispose of your case? It does not, Your Honor, because a due process finding is not actually necessary. But what is the process that he was due? Your Honor, he was the process he was due was before the government could take away his statutory liberty interest to be scheduled for an oath, he was due notice and an opportunity to be heard at a meaningful time and in a meaningful manner. By the time the USCIS adjudicated his application 11 years later, so much time has passed that it is no longer a meaningful time. You sort of skirt in what I think Judge Fuentes is putting right in front of you. If we were to say that 1447B was available to him, isn't that all the process he was due? I mean, if it was there and he could have walked into the district court and said, I should have had my paperwork. It's been more than 120 days. I need relief. Why isn't that a fully adequate procedural remedy for the problem he found himself in? Two responses, Your Honor. First, of course, we contend it was not available to him. Right. But, of course, now you're assuming the hypothetical he's putting in front of you. If it was available, Your Honor, and even if this, therefore, does not rise to a due process violation, non-protonc relief is still appropriate, even if this court finds there was not a due process violation. And that is because, as this court noted, non-protonc relief is available where agency error would otherwise result in an alien being deprived of an opportunity to seek a particular form of deportation relief. This is the ultimate form of deportation relief. He should have been a citizen for 10 years at the time of his arrest, and he should have never been eligible for deportation. Thank you, Your Honor. Thank you. Did you reserve time for rebuttal? I don't remember. I saved a couple minutes. Okay, great. So we'll hear from you again. Thank you. Ms. Browning? May it please the Court, my name is Rachel Browning, and I represent the United States Attorney General, the Respondent. The former INS's delay in adjudicating Mr. Durand's naturalization application did not forever bar him from seeking naturalization, and it did not trigger these removal proceedings. Could he have gone to district court under 1447B, or do you agree with Mr. Glenn that that was not available? No, I believe that would have been the appropriate remedy, Your Honor, because I think the facts support the conclusion that at the time of his interview, he was, yes, told he passed the civics and English exam, but the interview slip indicated that the INS would make a determination. How do we distinguish that from the Second Circuit's holding that 1442 was not available, 1447 was not available? Well, first of all, Your Honor, I think it's important to point out that was not the Second Circuit's holding. The Second Circuit actually affirmed the dismissal of that case because the petitioner had failed to exhaust his administrative remedies. So the Second Circuit's entire discussion about what the appropriate remedy would have been in that scenario I would say was dicta. In that case, according to the court, the facts were that he had received some sort of final approval but hadn't been scheduled for an oath. And so the Second Circuit suggested that it wasn't going to be the appropriate remedy, and in that situation they suggested that mandamus may have been the appropriate. But the important thing about that decision as well is that the court also said that they weren't even sure mandamus would have been available to him in that situation because he had not yet taken the oath, and so there was no entitlement to naturalization. And at that point the service had already reopened his case based on the length of time that that gentleman had been out of the country. So it points out an important thing first about I think the liberty interest analysis. To the extent that Congress has decided what procedures and prerequisites will make someone a naturalized citizen, you can acquire a statutory right to citizenship, but only once all of those conditions have been... Well, he's not arguing that we should somehow include... We can't do that. He's not arguing that we should confer a citizenship. He's basically asking us to prevent the removal because of the agency's error here. And there is some equitable appeal to that, just in terms of basic fairness. If you take out of it the conduct which has put him in this situation, you can clearly argue, look, he made his own bed here. But that aside, there is some appeal, at least to me, in the argument he's making, that had the agency not messed up, had they scheduled the hearing within the time they were supposed to schedule the hearing, this guy would have been a citizen now and not subject to removal. I understand the concerns of the Court, Your Honor. However, where there is clear relief available to someone in that scenario, no courtunk is simply not within this Court's authority. Well, he's arguing, as I understand it, that 1447B is not available because it turns on, is limited to a determination under 1446, and that the problem here with the 110-day trigger is not something which would arise from a determination under 1446. Therefore, 1447B, that's his argument, as I understand it. Therefore, 1447B doesn't really apply. Well, I understand that's his argument, but I would say that in this situation, 1447B would have been the appropriate remedy for him. And the fact that he kept going back to – Can you point us to something? Because he points us to the Second Circuit case and say, they say it wouldn't work here now. I understand you've just said you think that's dicta, but do you have – I also believe that the two cases are factually distinguishable because in that case, the Second Circuit found that there had been some sort of a final determination, and yet he hadn't been scheduled for an oath. In this case, there hasn't – Didn't he have filed for mandamus? Could he have gone and said, they've made a final determination, I've got everything I need, they just have to schedule hearing, make them do it? I suppose – I mean, the district courts have mandamus jurisdiction to compel agencies to act. So, I mean, he could have, I suppose, tried that. He had 10 years to figure out something. I mean, the INS's delay was regrettable, but Congress specified – That's an understatement, huh? Well, you know, at some point he gave up, and I think that's important to recognize, that the failure of INS to adjudicate his petition in 120 days did not create the circumstances that find him in removal proceedings now. It is remarkable, though, isn't it, that once he was in trouble with the law, and they found his file in a hurry, and they put it all together in a few months, they were ready to throw him right out. When they wanted to move, they could move, couldn't they? Well, I mean, I have no idea. To be fair, the assertions with regard to the A number, there's no indication – there's no reason to draw the conclusion that the mix-up of the A number is what caused the delay. We don't know what caused the delay. That's a really fair inference, isn't it? Well, both of those A numbers, Your Honor – It's the only thing in the record that explains it, isn't it? I'm not sure. I think it explains why when he went to find out what happened to his application and gave him the old A number, they said, we don't know that number. Are you suggesting there was some other reason? No, I'm just saying we don't know the source of delay. So for him to try to tie this to some sort of affirmative government misconduct – Well, his fault was the delay. He didn't cause the delay. No. You could argue that he should have done something to stop the delay. But clearly, whoever caused the delay was a government employee at the agency. Whether it was because of an A number being screwed up or a fraudulent loss, whatever the reason was, the reason that the 10 years lapsed was clearly on the shoulders of the government. I don't dispute that, Your Honor. I'm simply saying it's not – we don't have enough information to say that there was affirmative government misconduct. And as this Court has pointed out, delays in the adjudication of applications simply don't rise to meet that burden in order to make an estoppel claim. While we're talking about remarkable things that the agency does or doesn't do, talk to us about USCIS adjudicating his naturalization when they had no authority to do that. Your position is, yeah, they shouldn't have, but that doesn't prejudice him. How is he not prejudiced by an adjudication without authority that he's not entitled to citizenship? Well, the USCIS didn't have the authority to adjudicate the application. But it was harmless error because at most, at most, in removal proceedings, if a naturalization application, which is pending, comes to the attention of the immigration judge, he can go to DHS. And if DHS, the ICE attorney, or USCIS makes an affirmative statement that that individual is prima facie eligible for naturalization, the immigration judge can then terminate the proceedings and allow the naturalization application to move forward. At this point, however, Mr. Duran was no longer eligible. He was no longer prima facie eligible for naturalization based on his criminal conviction. So there was no – the judge would have had no – I understand it might not have made a difference in removing him at this point. I guess what I'm asking is, is there a meaningful difference to an applicant in being told, well, we haven't decided your naturalization, but we can tell you this, you're getting kicked out for your criminal act, and being told, we have decided that you're not entitled to be a citizen. Is there – is that a distinction without a difference? I think, you know, at most what he would have been told, had they not made a decision, the judge would have said, I'm sorry, but, you know, we can't terminate these proceedings because you're no longer eligible for citizenship. The person's eligibility does not become fixed at the time that they pass the English and civic exams. The regulations give the immigration authorities the authority to reopen that case should any information come to their attention that's derogatory with regards to that person's application. So is the bottom line, even if you concede that there was a wrong here, and I'm assuming you concede that it's wrong to leave somebody without a scheduled oath ceremony 10 years after they've been told they're entitled to it, that even though there's a wrong here, there's nothing to be done? Well, our position, Your Honor, is that even if there was a wrong, even if that wrong rose to a due process violation, he had a remedy available to him at the time. And with that remedy in place, his argument fails. Could you comment on Mr. Glenn's point that there had been a final determination so that he could not avail himself of 1447B? The only comment I can make. You do agree that the only thing he was waiting for is a scheduling of the oath ceremony? I believe he was also waiting for a final determination. A determination of what? The final determination of his eligibility. I mean, the officer said he was told that he passed the English. He was already told, he was congratulated. He might have even shaked hands and he was sent on his way and told, you're just waiting for the oath. Do you know of anything else that was missing in his application? I know that typically, and this is just my knowledge outside the record, when an application is finalized and that is sent together with the instructions for the oath and that constitutes a final determination. Even with that, if between that final determination and the oath ceremony, something happens that makes that person no longer eligible, even at that point, that approval could be rescinded. What could happen? Between the time you pass the exam, fulfill all your requirements, and you take the oath, additional information I guess could come to the agencies, but there's nothing here to suggest that there was information out there at the time he was told they were going to schedule him for an oath. And there was nothing to suggest that information was going to come in and disqualify him. No, I'm not saying there was. I'm simply saying that that undercuts his argument about having a liberty interest at the point at which he passed those exams. You might say he had a liberty interest contingent upon the agency not discovering any information that would invalidate his application. I would say the liberty interest is contingent upon him reaching that final and having established every prerequisite, including the oath. If this were a situation in which he had taken the oath and should have been and the government was, for whatever reason, withholding his certificate of citizenship, then that would arguably rise to a due process violation. Does the agency have a duty, a nondiscretionary duty, to dispose of these applications within a certain period of time, say 120 days? Dispose of them? I'm not sure. Well, approve them, grant them, or actually schedule them for the next step. The officer was mandated to make a determination within 120 days. And so to the extent that he had a right to continue to the next step in the process and receive the oath, his statutory right was violated, but he had a remedy in 1447. All right, so the approval has to come within 120 days. I believe what it says is that if a decision has not been made within or final determination has not been made within 120 days, then the proper recourse is for the individual to go into federal district court where the district court can decide the case or they can remand it back to the service. In this case, had he not been approved? I'm sorry, I don't understand. Was he not approved for a naturalization? There was just no determination. Within 120 days? So the statement, the statement, you're done, you're good, you're good to go, all we have left to do is the oath, that's not a binding determination on behalf of the government by the INS officer? Without knowing exactly what the INS officer said. I mean, I could see a person hearing you pass the... Our only record is that that's what was said, right? Government hasn't come and said that isn't what happened. Congratulations, we'll schedule for the oath. Well, I still maintain the position that 1447B would have been the appropriate because... Well, that's what we're pressing you on. Why do you do that? If we accept the premise that's being put to us by the petitioner, which is there was a determination, it had happened. They said it right to my face. If we accept that position, how does 1447B apply when by its terms it says if you haven't had a determination, you can come to the district court? Well, Your Honor, I would go back to the record. And whatever the INS officer may have said, he also handed him a sheet of paper saying that the INS will notify you once they've made a final determination. And by his own admissions, Mr. Duran went back to the service saying they told me, wait, we'll make a final determination, we'll send you the oath. And that's so, you know, what he heard and what was written maybe got confused. But... Well, supposing we were to determine that he's entitled to some process, some sort of due process. But 1447 will not do it because Mr. Glenn's argument is that there was a final determination. Do you suggest then that there's a constitutional violation that has no remedy at all? No. I mean, I can only speculate and suggest that perhaps if that brought this case into line with the Second Circuit factual scenario, that possibly mandamus would have been available to him. Either way, the case goes into district court. And because he was not in removal proceedings, the district court takes jurisdiction over naturalization applications. Does the government have in cases like this where, let's say Mr. Pichard has been in this country for 20 or 30 years, I think, 30 years, and because of that, the problem with the naturalization notice now has to go back. Does the government have discretion to waive removal? Well, I suppose you're referring to the prosecutorial discretion issues. Yes. Does he qualify for that? ICE is making those determinations. He has not been an individual that's been designated for that because of the seriousness of his criminal conviction. So that's all I have to say on that matter. I don't have any other questions. Do you look beyond the charge that he's convicted of, or do you look at the facts, the underlying facts, to determine just how serious this was? They look at both. I know that they have lists of things that they are looking at, but this was a very serious crime. Okay. Thank you. Okay. Anything else? Mr. Brownlee, thank you. Two points, Your Honors. First, the government and the USCIS here have admitted in briefing and in the incorrectly adjudicated 2009 application that Mr. Duran met the requirements and that the officer determined that he met those requirements for naturalization. Under 1447B, no determination was left to be made. All that was left was a clerical job. Then why not petition for mandamus? And absent that, I mean, if your argument is a due process argument, then it seems to me that argument is met by the following, that, yeah, you have a due process interest once the determination is made, the way 1447B is worded. You don't have a remedy because you're not, as I said earlier, you don't have a federal determination under 1446. However, all that's left is a ministerial act that does not involve the application of discretion. Therefore, you're entitled to a writ of mandamus, and that is the process that satisfies your due process argument. Your Honor, Mr. Duran is an individual with a sixth-grade education, and he had no means at the time to hire an attorney. The availability of a writ of mandamus, which is certainly an extraordinary remedy, should not weigh against him in this proceeding, and that's because non-protonc relief is available even if there was some other process he could have taken advantage of. Now, that's an interesting position when you say, it is available even though, I mean, that assumes that we can assume away all the history that's come between then and now. I mean, the iter case that you rely on, in the end, doesn't it stand for the proposition that the government can foul up and foul up magnificently? And still, a frustrated applicant can be left with no remedy because there's no power in the courts to help him out. Not when he already met the congressional requirements. And here, he did meet those five requirements. We're not asking court to counterman the will of Congress and go beyond those requirements. But you are asking us to ignore the fact that he's a multi-kilo cocaine dealer who's already out of the country. And I'm not quite sure how non-proton relief would be ordered under those circumstances as if those things with – what you're really asking us to do is to order the service to ignore the INA, to ignore the law. You're asking us to say, never mind all that stuff about convicted, aggravated felons being ineligible. Pretend none of that stuff happened. Go back and fix it. Are we really in a position to tell them to ignore the law that governs their agency? No, Your Honor, but you're in a position to tell them to follow the law that governs their agency. Well, that is the law that governs their agency. The law that governs their agency says you can't give citizenship to an aggravated felon. It's undisputed and indisputable that he's an aggravated felon. Non-proton, not all that good with Latin, but I think it means, you know, like going back in time. Well, you can get away with that in some circumstances, but can we really blow past aggravated felony like it didn't happen? Yes, Your Honors, because a non-proton relief is dependent not on the time that has elapsed, but on the nature of the clerical error and the prejudice that resulted. Here it was a clerical error. The prejudice is that – We're talking about intervening events, intervening events which implicate statutory provisions. Congress has been awfully clear. Aggravated felons don't get to be citizens. In light of those intervening events, not just the passage of time, doesn't your argument for non-proton relief have to crater? No, Your Honor, and I know my time is up. If I may briefly make two points. First, in most cases where a non-proton relief would be granted in an immigration proceeding, we don't have clean hands on one side of one of the parties. For example, in the Batonic case, the Seventh Circuit case, where non-proton relief was granted to allow the applicant to apply for asylum, even though he could have applied for asylum, but he didn't know about it, which is precisely the case here, that was a possession with intent to distribute case. And finally, Your Honors, in a case that the Supreme Court quoted just last week from the judge-learned hand, the quote I think is very relevant here. It is well that we should be free to rid ourselves of those who abuse our hospitality, but it is more important that the continued enjoyment of that hospitality, once granted, shall not be subject to meaningless and irrational hazards. The irrational hazard here, Your Honor, is precisely what the Supreme Court noted, a capricious action by a single officer and non-proton is the appropriate remedy for this Court to make sure that that does not leave to Mr. Durand's exile from his family. Mr. Glenn, thank you very much. Very good argument. I want to commend both of you. I've not seen either counsel before. Mr. Glenn, you are pro bono, I believe. Yes, Your Honor. I want to thank you on behalf of the Court for your time and service. And I assume this is the partner who did none of the work sitting at counsel table, making sure he didn't screw up too badly, and you didn't. But I want to thank the firm also for the support you've given us in this matter. Thank you. Take the matter under advisement.